# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# MIDLAND DIVISION

| | |
|---|---|
| **FORMON THOMPSON,** § § | |
| Plaintiff, § § | |
| vs. § | CIVIL ACTION NO. 7:22-cv-246 |
| § § | |
| **MIDLAND COLLEGE,** § § | JURY TRIAL DEMANDED |
| Defendant. § § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Plaintiff, FORMON THOMPSON (hereinafter, "Plaintiff"), by and through his undersigned attorneys and complains of Defendant, Midland College, (hereinafter, "Defendant") and files this Original Complaint showing the Court as follows:

### INTRODUCTION

1. Plaintiff was a resident of Midland, Texas

2. Plaintiff demands a jury trial in this case to any and all issues triable to a jury

3. Plaintiff files this complaint and complains of discrimination on the basis of race under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

4. This action seeks compensatory damages, punitive damages, lost wages (past), attorney's fees, taxable court costs, and prejudgment and post judgment interest.

### PARTIES

5. Plaintiff was a resident of Midland, Texas.

6. Defendant is a non-for-profit public community college located in Midland, Texas. Defendant may be served with process by mail or in person on its registered agent, Steve Thomas, President of Midland College, at 3600 N. Garfield Street Room 135, Midland, Texas 79705.

## VENUE

7. Venue is appropriate in the United States District Court for the Western District of Texas, Midland Division, because Plaintiff worked in Midland, Texas and a substantial part of the events or omissions giving rise to this lawsuit occurred in Texas, as required under 28 U.S.C. § 1391.

## JURISDICTION

8. This court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction), under 42 U.S.C.§2000e and 42 U.S.C. §1981.

9. The unlawful termination and employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL REQUESTS

10. All conditions precedent to the filing of this action have been met by Plaintiff. Plaintiff was terminated from his employment with Defendant on June 1, 2021 and timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 10, 2021.

11. Defendant has well over 15 employees and has well over 15 employees throughout the entirety of Plaintiff's employment with Defendant.

12. The EEOC issued a Notice of Right to Sue letter on August 30, 2022, entitling Plaintiff to file suit based on race discriminatrion.

13. This lawsuit has been filed within ninety (90) days of Plaintiff's receipt of the notice of Right to Sue Letter from the EEOC.

## FACTS

14. Plaintiff is an African American man.

15. Plaintiff was hired by Defendant as the Dean of Enrollment Management on January 7, 2019.

16. After two successful employee evaluations and many accolades, Plaintiff decided to apply to become Dean of Adult Education and Literacy.

17. Plaintiff accepted the new position and began on May 3, 2021.

18. Throughout the course of his employment with Defendant, Plaintiff was qualified for his job position(s) and was meeting/exceeding Defendant's legitimate job expectations.

19. The Plaintiff's direct supervisor was Jennifer Myers (white), who is currently the Associate Vice President of Workforce Development ("AVPWD") for Midland College.

20. Immediately after starting the new position, Ms. Myers pressured the Plaintiff to put plans in place to fix many of the problems within the department.

21. Plaintiff observed the program operations and found that employees had no set schedules, were often late to work or did not show up, even though their time and effort sheet would reflect being present for a full schedule.

22. Plaintiff began to understand that employee timesheets were regularly falsified.

23. For example, employees claimed time for not working, worked from home for months unaccounted or without approval.

24. Many of the employees who were defrauding the College were connected to Damon Kennedy, Vice President of Academics, and the Human Resources Director, Natasha Morgan (white).

25. This put Plaintiff in a bad spot because he was bringing attention to how this group of people has been cheating the government-sponsored defendant for years.

26. Plaintiff continued to bring to the administrators attention his concerns about the mismanagement of grant funds. However, the administration plans became apparent when they asked the Plaintiff to approve timesheets for employees with no job description or incorrect timesheet log-ins or even no record of working.

27. As soon as the Plaintiff began following up on these fraudulent activities the administration began receiving complaints stating that the Plaintiff should not be asking questions about job duties.

28. In one specific instance, the Plaintiff learned that an employee was using Midland College facilities to give private lessons to students from the Midland Independent School District , while on the clock for Midland College, which is considered double billing.

29. Once the Plaintiff brought this to the attention of his Supervisor, Jennifer Myers, and the Human Resources Director, Natasha Morgan (white), the Plaintiff was told not to worry about it and that it was not his program. Natasha Morgan did not want to pursue that investigation because many of the defrauders were her friends.

30. Plaintiff brought the fraud to the attention of the Texas Workforce Commission on March 28, 2021.

31. Plaintiff made multiple attempts to share and discuss his concerns with Jennifer Myers. Nevertheless she shared confidential information about those meetings with the staff, which led to the team losing complete trust in the Plaintiff.

32. On May 11, 2021 Plaintiff asked to schedule a meeting with Margret Chavez (White), who no one in the office claimed to know. Ms. Chavez was being paid out of the Texas Workforce Commission grant budget.

33. During the meeting that he eventually had with Chavez, the Plaintiff asked simple questions about Ms. Chavez's job title and responsibilities, but Chavez did not want to provide that information.

34. Plaintiff brought several matters to the attention of his supervisors like the fact that most employees did not have Personnel Status Forms, employees did not have job descriptions, and falsification of many employee's time and efforts sheets.

35. On or around April 28, 2022 the Plaintiff invited Veronica Villegas (Hispanic) to a meeting. The Plaintiff noticed that Ms. Villegas was coming to work late, leaving early from work and sometimes even after her lunch break. All these absences and half days were not reflected in the employee's timecard.

36. After the meeting, Ms. Villegas filed a complaint against the Plaintiff.

37. Another instance of fraudulent activity arose when the Plaintiff investigated Ms. Gaudau (White).

38. Ms. Gaudau was making $24.50 an hour, a rate reserved only for educators. Ms. Gaudua was at the time an assistant and should have been making only $13.00/hr.

39. When the Plaintiff reported this to Ms. Myers and Ms. Morgan, nothing happened.

40. In fact, Ms. Myers told employees that the Plaintiff was attempting to lower everyone's salaries.

41. Natasha Morgan also refused to work with the Plaintiff to discipline staff who had falsified time sheets or abused the Colleges procedures.

42. Ms. Gaudua even confided to the Plaintiff's secretary, Ms. Monique, that Ms. Myers told the whole staff to complain about the Plaintiff because she felt bad about it. The Plaintiff was only trying to get things in order.

43. The Plaintiff took his job seriously and attempted to the very best of his abilities to organize the dysfunctional work environment at Midland College, but because of his race, his white supervisors refused to support him.

44. On or around May 21, 2021, the Plaintiff was called into a meeting by Jennifer Myers and Natasha Morgan in the former's office. The meeting took place in a room with a glass wall connecting to the hallway which everyone could see.

45. The meeting took place over three hours, and in that meeting Natasha Morgan and Jennifer Myers laid out several false accusations against the Plaintiff.

46. Firstly, Morgan and Myers falsely claimed that the Plaintiff would be subject to termination based on retaliating against an employee for filing a complaint even though they never named the individual the Plaintiff allegedly retaliated against or the reason for the retaliation.

47. At Midland College there were two other Deans who were not African American that had complaints pending against them that were not terminated. These Individuals are Dr. Margaret Wade (Retired), Former Dean of Mathematics & Science Division and Dr. Carmed Edwards, Dean of Health Science.

48. Secondly, Myers and Morgan also alleged, as well as the termination letter, that the Plaintiff failed to rescind certain documents for ONLY non-black employee folders which the Vice President of the College asked him to do. However, Plaintiff did in fact rescind those documents per the instructions he was given therefore this accusation is meritless. The Plaintiff's secretary was the only Black employee under his supervision

49. The contents of those documents consisted of the Plaintiff's expectations for his employees, call out procedures, and confidential agreements.

50. Thirdly, Morgan and Myers vaguely alleged that the Plaintiff demonstrated unprofessional behavior. Plaintiff always conducted himself in the most professional manner with his colleagues.

51. However, because of his race, The Plaintiff was hindered in performing his job duties.

52. The Plaintiff was terminated from his employment on June 1, 2021 because of his race.

## COUNT I: RACE DISCRIMINATION UNDER 42 U.S.C. 42 U.S.C. § 2000e, *et seq.*

53. Plaintiff incorporates the allegations made in Paragraphs 1 to 52 herein

54. Title VII of the Civil Rights ct, 42 U.S.C. § 2000e, *et seq.* prohibits employers from discriminating against employees based on their race.

55. Plaintiff is African American

56. Throughout the course of his employment with Defendant, Plaintiff was qualified for his job position(s) and was meeting Defendant's legitimate job expectations.

57. Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*

58. Defendant discriminated against Plaintiff by intentionally engaging in differential treatment towards Plaintiff based on his race as an African American in the form of

terminating him based on the fact that Plaintiff was the only African American employee in a high-level administration position and he was allegedly terminated based on a fabricated complaint when other several Non-African American deans had complaints against them and were not terminated. This was a pretext for discrimination based on Plaintiff's race.

59. Shauna Hannsz, who is white, replaced the Plaintiff in his position. She was also the go to person for Jennifer Myers, since she was white and non-black.

60. If the Plaintiff was not African American, he would have not been discriminated against based on his race or unlawfully terminated.

61. As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. § 2000e, *et seq., Plaintiff was wrongfully terminated.*

62. Plaintiff has suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

63. Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of punitive damages. Plaintiff therefore seeks punitive damages in a sum to be determined by the jury to serve as punishment to deter Defendant from such conduct in similar situations.

64. Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## COUNT II: RACE DISCRIMINATION UNDER 42 U.S.C. 42 U.S.C. § 1981

65. Plaintiff incorporates the allegations made in Paragraphs 1 to 52 herein.

66. Section § 1981 prohibits employers from intentionally discriminating against employees based on their race.

67. Plaintiff is African-American

68. Throughout the course of his employment with Defendant, Plaintiff was qualified for his job position(s) and was meeting Defendant's legitimate job expectations.

69. Defendant, by and through its agents and employees, especially Natasha Morgan and Jennifer Myers, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 1981.

70. Title 42 U.S.C. § 1981, inter alia, protects at-will employees from employment discrimination on the bases of race and national because at will employment in Texas is a form of contract. Fadeyi v. Planned Parenthood Ass'n, 160 F.3d 1048 (5th Cir. 1998). Defendant offered to pay Plaintiff for his work and Plaintiff accepted that offer by performing the work. Thus, the parties entered into a contractual agreement covered by 42 U.S.C. § 1981.

71. Defendant discriminated against Plaintiff intentionally engaging in differential treatment towards Plaintiff based on his race as an African American in the form of terminating him based on the fact that Plaintiff was the only African American employee in an administration position and he was terminated based on a fabricated complaint when other several Non-African American deans had complaints against them and were not terminated.

72. If Plaintiff was not African American, he would have not been discriminated against based on his race or unlawfully terminated.

73. As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. § 1981, Plaintiff has suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

74. Defendants actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of punitive damages. Plaintiff therefore seeks punitive damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

75. Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorney's fees.

**JURY TRIAL DEMANDED**

76. Plaintiff demands a trial by jury.

**PRAYER**

77. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this case, Plaintiff has the following relief:

    a. Back Pay and Lost Benefits;

b. Pre-Judgement interest on Back Pay;

c. Front Pay;

d. Compensatory Damages, including but not limited to, emotional distress;

e. Punitive Damages;

f. Injunctive and Affirmative Relief;

g. Post-Judgement Interest

h. Attorneys' Fees and Costs; and

i. Such other and further relief, at law or in equity, general or special, to show which Plaintiff may show he is justly entitled.

WHEREFORE, Plaintiff requests damages and reasonable attorneys' fees from Defendant pursuant to Title VII, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981, to be proven at the time of trial for all compensatory damages, exemplary damages, and attorneys' fees and costs along with any other relief that this Court finds reasonable under the circumstances.

Respectfully submitted,
**COANE AND ASSOCIATES, PLLC**

*/s/Zane Noureddine*
Zane Noureddine
Texas Bar No. 24128481
Email: *zane.noureddine@coane.com*
COANE AND ASSOCIATES, PLLC
5177 Richmond Ave., Suite 770
Houston, TX 77056
Telephone: (713) 850-0066
***ATTORNEY FOR PLAINTIFF***

Of Counsel:
Bruce Coane
SD TX #7205
TX: 04423600
COANE AND ASSOCIATES, PLLC

5177 Richmond Ave., Suite 770  
Houston, TX 77056  
Telephone: (713) 850-0066  
bruce.coane@gmail.com